### GUS. FINLEY *v.* COMMONWEALTH.

[Abstract Kentucky Law Reporter, Vol. 6—443.]

**Voluntary Intoxication No Defense for Crime.**

It is no defense for an accused in a murder case to show that he was badly intoxicated at the time of the killing, as voluntary intoxication will not excuse one in committing crime.

**Instruction as to Defense of Insanity.**

>  Where there is no evidence in a murder trial as to defendant's sanity at the time of the killing the court is not called on to instruct the jury as to the law governing the defense of insanity.

### APPEAL FROM FLOYD CIRCUIT COURT.

December 4, 1884.

OPINION BY JUDGE PRYOR:

The appellant while in an intoxicated condition and without any provocation whatever shot the deceased, Hunt, through the body and in a few days the latter died.

It seems that the accused had obtained a buggy of one Dagley for the purpose of taking a drive and becoming intoxicated and Dagley seeing his condition attempted to take the horse out of the buggy to keep him from breaking it to pieces. While this attempt was made the accused had gone into a store room for some purpose, and on his return, seeing Dagley's purpose, with pistol in hand told him if he did not again harness the horse or hitch him to the buggy he would take his life. It required the efforts of two men present to prevent him from taking the life of Dagley and the latter was compelled to run into the store when the door was locked to save his life. The accused then broke the door down and when entering as he arose from the floor, having fallen, Dagley struck him on the chin with a weight that did not seriously affect him. This young man Hunt was in the store and in getting out of it by the back door was seen by the accused and shot by the latter, the wound causing his death.

His purpose was to take human life without any other reason than his inflamed passion aided by a stimulant that developed fully this determined purpose. The man he killed had done him no wrong and the man he attempted to kill was equally as innocent and we see no reason for disturbing the verdict below, however severe the punishment.

An instruction as to murder and manslaughter was given and there was no evidence in the case authorizing any instruction as to the sanity or insanity of the accused. Still an instruction was given that authorized such a finding if the jury could find anything from the evidence that would authorize such a conclusion. The fact that

Dagley had left the store with Hunt and that the accused was in pursuit of him when he killed Hunt does not palliate the offense. He may have been mad drunk to use the language of the witness still he is equally guilty. There is no doubt but that he fired the shot without any provocation or excuse and took the life of the young man. We can not well see from the facts how the accused could have been prejudiced by the instructions given even if erroneous, but we think they presented the law of the case.

After breaking the door of the store down the accused when rising to his feet, having been struck with the weight, fired a shot at Cecil and the latter cried out "not to shoot at him." The appellant knowing his victim or the man he desired to kill turned in the direction that Dagley had gone and Hunt making his appearance was shot under the left arm. Dagley and the accused may have been intimate friends but the whole transaction shows the murderous intent with which he was pursuing an innocent man, and while if he had not been drunk the shooting never would have taken place, the accused's own testimony conduces to show the effect that whisky had upon him and knowing this fact he should have abstained from its use.

Judgment *affirmed.*

*F. A. Hopkins, for appellant.*

*P. W. Hardin, for appellee.*